arguments not to exceed 15 minutes per side. Council, where for the appellant? Good morning. I would ask the court if I could reserve three minutes for rebuttal. The matter is before the court on review of the district court's denial of appellant's petition for writ of habeas corpus. Having exhausted review in the state courts, appellant filed a petition for habeas corpus in the Eastern District of Michigan on February 28th, 2011. The petition was filed pro se, so it was deemed filed January 24th, 2011, the date that it was signed by the appellant. In the petition, appellant sought review of five claims, four of which were denied COA or certificates of appellability. We're here today on the Crawford issue. In particular, we're here today with regards to a statement made by a deceased, unavailable accomplice witness that was admitted for impeachment purposes against the defendant with regards to charges of obstruction of justice and subordinate perjury. Now, what was significant about the statement that was admitted, other than the fact that it was contrary to the Sixth Amendment prohibition against criminal prosecution where the judge shall enjoy the right to be confronted with witnesses against him, was that the statement itself was actually never used specifically for impeachment throughout the trial, but it wound up being used instead by the prosecutor as substantive evidence of a crucial element of the case, which was with regard to identification of the shooter. In the statement, which was given to a police officer, I believe it was Lieutenant Nolan, the accomplice claims or alleges that Mr. Nobles was the shooter in an incident involving a car in a Coney Island. And the only real issue, because Mr. Nobles testified in a case that he was present, that there was three other individuals in the car who was present, one of which was the deceased, Colby Bohannon. So the only issue in the case was actually who fired the shot. Mr. Nobles' testimony was that he actually never left the vehicle. And it was that Rocky Bohannon, which was Colby Bohannon's brother, was the one who fired the shot. Don't you run into a problem with the jury instruction in regard to that argument since the court instructed the jury not to consider the statement for the truth of the matter, only for impeachment, and we have to presume that the jury complied with the instruction? Well, I don't think that's correct, Your Honor, because first of all, the trial court admitted that the instruction he gave during the trial did not specifically state that the defendant's assertion of Rod Jeter was not going to implicate him. And that's at page 94 of the transcripts where the court stated, I didn't use that direct language, but that's exactly the purpose. So he didn't actually specifically instruct him in that manner. He did indicate that it was being introduced for impeachment purpose as to the credibility of the defendant, but the problem with that argument, Judge, is the fact that the statement existed couldn't impeach whether or not Mr. Nobles was aware of the statement. And that was the question that was asked him, weren't you aware that Rod Jeter gave a statement? Mr. Nobles said, as far as I know, Rod Jeter hasn't said anything to anybody. So then the statement is introduced purportedly to impeach his knowledge of the existence of the statement. But then the prosecutor went beyond simply showing that there was, in fact, a statement and actually read the contents of the statement. And what was significant about that is, in all the other cases where we look at statements being admitted of unavailable witnesses that were not subject to cross examination, the courts have upheld them where the use was very limited. You know, even taking that into account, didn't the judge actually say to the jury, this statement is not being presented to you for the truth of the matter asserted? The court did actually make that statement, did it not? Yeah, I understand that, Your Honor. But that wasn't how it was used, and I think that the jury didn't understand that that was not how it was supposed to be used, because they acquitted him on the obstruction of justice and the subordinate perjury charge, which was the whole motive for impeaching his denial of being aware of the statement, because that was going to show that he had a motive to obstruct justice because he was aware Jeter was making these statements implicating him. So that was why it supposedly came in. But the jury either didn't understand that, or they simply rejected it. And he was acquitted of those two counts, and instead the jury asked the court to replay Officer Nolan's testimony, which was probably one page, where the prosecutor asked him, didn't Jeter give a statement implicating Mr. Nobles? And he says, yes. And then they convicted him. And that is significant because when we look at McPherson, when we look at Tennessee v. Street, when we look at Crawford, all of them basically allowed it in and basically did it based on how limited it was used, and in particular that it was never addressed or used in the closing argument. And here the prosecutor used it repeatedly, not only in the closing argument, but she built up to the closing argument. As early as page 9 of the transcript, she starts indicating Rod Jeter can tell what page 70. Two people could implicate you. Rocky Bohannon, Rod Jeter, page 77. He told Homicide, you were the one. So Rod Jeter is testifying in this trial, and she understood Rod Jeter to be testifying, and she told the jury one, two, three, four times, Rod Jeter is speaking from the grave. Now, Rod Jeter wasn't speaking about obstruction of justice and subordinate perjury because he was charged with obstruction of justice and subordinate perjury. So what was Rod Jeter speaking about? He was speaking about, I'm going to identify Kelly Nobles from the grave, which is what, in fact, she said Rod Jeter did. She mentions Jeter one, two, three, four, five, six, seven, eight, nine, 10, 11, 12, 13, 14, over 20 times in her closing argument. He never was there. He was never subject to cross-examination. He never testified. She mentions him over 20 times, and in the cases where we look at McPherson, where we look at Street, the courts say it wasn't used in the closing argument. For example, in, I believe it's in Street, where there was an issue with regards to the confessions, the court said the prosecutor specifically only used the defendant's confession in the closing argument, not Peel's confession, when she made her case. Because Peel's confession came in because in Street there was an issue that the defendant claimed that his confession mimicked someone else's, and it had been coerced out of him. So they went through it to say, look, this is different, this is different, that is different. But even when she got to closing, she never again refers to Peel's confession. Instead, she goes to items that were given by the defendant's confession that only he could have known. Now, when we look at this under Brick, Brick requires that whether the evidence had a substantial injurious effect on the jury's determination. And what does that mean? Whether the jury gave undue weight to the evidence. All of the other witnesses that testified either testified that the individual shot was Rocky Bohannon, or based on other evidence, the only inference could be that it was Rocky Bohannon. In fact, the prosecutor spent a lot of time in her closing telling the jury, ignore the other witnesses. They can't see good. They might have been scared. They were hiding under desks. They might wear glasses. She told them to ignore everybody, other than Rod Jeter, who was not there. They testified to height between 5'7 and 5'6. Nobles was 6'3. There was testimony to the weight of the shooter, 150 to 175 pounds. Nobles was 260 pounds on the date of this. The shooter had a brown or tan coat. Dorian Williams testified that he saw Rocky Bohannon earlier at the barbershop with the tan coat on. Nobles had a black coat. They testified to the back seat of the car. I think that was Nash and Ms. Johnson. They saw the shooter jump back in the back seat of the car, stick the gun back in his pocket. Rocky Bohannon testified himself he got back in the back seat of the car. They testified to the gun. Rocky Bohannon had the gun in the morning. Rocky Bohannon had the gun in the afternoon at the barbershop. And Rocky Bohannon had the gun when he jumped out and ran behind his brother, Kobe. That's exactly what the prosecutor told the jury to ignore. And that's exactly what they did. Instead, they asked to hear Officer Nolan's testimony again on did Jeter implicate Mr. Nobles. And repeatedly, the prosecutor states, there's three people that were in that car. Two of them are going to implicate Mr. Nobles. Well, there was only one of them that testified. The other one was deceased. He was not there. He was never subject to cross-examination. I think also when we look at this case, not only did it go beyond Street, McPherson, but it lands squarely on top of Crawford. This was the exact circumstance that Judge Scalia found so repugnant in Crawford when he said the prosecutor referred to her statement as damning evidence. And in this case, the prosecutor continually speaks about Jeter speaking from the grave. In Crawford, the statement was given to, quote, a neutral officer. In this case, the statement is given to an investigating officer. And as Justice Scalia also stated in Crawford, he said the Sixth Amendment should not be subject to the vagaries of ruse of evidence or amorphous notions of reliability. Counselor, are you also going to address the equitable tolling issue? We believe that the court was correct with regard to the equitable tolling issue. And I think the simple reason I can tell the court quickly why we believe that was correct, because if Mr. Nobles wasn't entitled to equitable tolling, neither was Holland and Holland v. Florida. They had the exact same situation occur where in both instances, the courts were concerned that the attorneys breached the professional standard of review and that the attorneys, quote, abandoned their clients. And in Mr. Nobles' case in particular, all of the evidence, as Judge Duggan pointed out in his opinion, showed that Mr. Nobles was diligent in pursuing things he could pursue. But once he was represented, anything he submitted, or at least he was under the impression, was going to be rejected, was not going to be received. And that's what happened in Holland. Holland tried to send stuff and they kept sending it back to him saying, you're represented by an attorney. In the end, Mr. Nobles did submit his own motion, which the court said later when his attorney who had been on the case five months submitted, it was the exact same motion. Okay. And I know you have the red light, but there's an issue of how many months of equitable tolling was your client entitled to? If he was abandoned by the counsel for five months, does he get more time than that, or is he limited to the five months? I think what the court looked at was the December 23, 2007 motion that he filed and started calculating from there. Because she filed the same one on February 9, 2008. And if we were to get him days back, you're looking at about 68 days. I think the people said that when he filed it, he was 49 days late. So even if we subtracted the 49 from those 68 days, he would have still had 11 days on that tolling. I mean, the numbers are, it takes a while to go through them and I know I'm out of time. But I think that was the date that the court specifically relied on in the district court with the December 23, 2007 filing. Counsel, I have another problem with that. It was Judge Duggan that made the ruling, the equitable tolling ruling. How is that issue in front of us? Was that in the request for a, I mean, was that cross appeal? No, Your Honor, I believe the people raised, and I don't think they're required to have a Certificate of Appealability to raise their own issues on appeal. And they raised that in their brief for the first time that we saw. That's the first time I've run into a statute of limitations problem in a case where we're bound by the Certificate of Appealability. I wonder if there's any law on that. I'll be honest, I didn't look it up. Okay. Well, I'll ask your opposing counsel. Good morning, Your Honors. May it please the court, Liz Rivard, appearing on behalf of Warden Woods. It appears this court has a few questions regarding the equitable tolling, so I'll try to answer those. How did that get up here? We raised a defense of the statute of limitations violation in the district court, which the district court then denied our motion to have the petition dismissed, finding that equitable tolling existed. However, our argument is that in applying that denial, the federal district court misapplied Holland, that the petitioner here is not entitled to equitable tolling. Well, in a situation where the whole question of an appeal is really a question of an appeal, is that a promise? Respectfully, Your Honor. In situations where a petition is, for example, granted, the state is not required to have a Certificate of Appealability to appeal to this court for a grant. This was preserved in the district court as a defense, and so that is why it was raised in our petition as step number one, the district court erroneously applied equitable tolling. Step number two, he correctly denied the petition since it was an unhearsay purpose and did not violate the Confrontation Clause. As far as any case law, I'm not aware of any, but if this court would like supplemental briefing on that issue, I would be more than happy to try to look into that to see if there's anything out there that would prevent us from raising a defense that has been preserved in the district court. Well, you may be right, and if you run across something within the next five days, maybe you could send us a letter brief, and maybe the opposing counsel could have another five days to respond. Is that all right with you? Thank you, Your Honor. Now, unless this court has any additional questions regarding AEDSA standards or the statute of limitations argument, I would like to proceed to the Confrontation Clause issue. All right. The evidence came in for the proper purpose of non-hearsay impeachment. This was not an extreme malfunction. And it would behoove you to go ahead and address counsel's argument that it was offered in closing the reference 20 times, I think. So that's... I mean, that got my attention. 20 times is a little bit of an exaggeration, and it appears that the prosecutor... It looked like counsel was counting those. The prosecutor's comments were being taken out of context. What the prosecutor was referring to... By whom? By counsel. Counsel is taking the prosecutor's comments out of context. What the prosecutor was arguing is that... You heard testimony that Jeter's not here. You have heard testimony from Ms. Whaley about what happened that she witnessed, her eyewitness testimony about what happened to Mr. Jeter and was being told to Mr. Jeter by Mr. Nobles, how Mr. Nobles treated them, how he tried to get them to leave for Arizona, how he tried to tell him to say that Rocky was the shooter and not Mr. Nobles. And so this was all based on Ms. Whaley's testimony, and that's what the prosecutor was referencing, facts and evidence based on eyewitness testimony about... Not invoking Jeter's... Not... Correct. Not... Correct, Your Honor. She did not reference Mr. Jeter's statement saying, this is what he said, this is evidence that he was the shooter. That did not happen a single moment during the prosecutor's closing. So with regard to... Well, there was something about mentioning two or three names and then saying directly or indirectly, you've been told by these witnesses what happened. And one of those, quote, witnesses was Jeter, apparently. I mean, there was that reference to his name. There was that reference. And I think she's referring, again, to Ms. Whaley's testimony about what happened after the incident, and referencing the other charges of the obstruction of justice and the perjury charges, not referencing his statement. And the evidence to support that is because as soon as she makes that reference, she talks about Rocky's testimony, and only Rocky's testimony. She does not mention Mr. Jeter's statement at all. So with regard to Judge Clay's question earlier, you are correct, Your Honor. The trial court immediately instructed the jury to not consider the statement for any elements of the offenses, that they could only consider it for the impeachment charge. The page that counsel was referring to was arguments being made outside the presence of the jury. I believe counsel referenced page 94 of that transcript, which is page ID number 1288. Instead, the instruction occurred earlier during cross-examination of Mr. Noble's page ID 1272. And so with that context in mind, given that instruction to frame the jury's mindset immediately before they hear this testimony, it's clear that this was entirely for a non-hearsay purpose, which under Street and under US v. Poole, Pugh, Grover v. Perry, this is a non-hearsay purpose, which does not implicate the Confrontation Clause. And it's clearly established that this non-hearsay evidence, as a non-violation of the Confrontation Clause, doesn't warrant habeas relief. It was only for the non-hearsay purpose to impeach the defendant's testimony. And so even if this ended up being a close question under Harrington v. Richter, habeas relief still must be denied. And again, even if this court found it to be error, the district court correctly noted that there was, if not overwhelming, but undeniably strong evidence against Mr. Noble's. One point would be Rocky's eyewitness testimony that he saw Noble's with the gun immediately after the shooting and that nobody else was firing. Those were the only shots he heard. Ms. Whaley's testimony that Noble's admitted that he fired those shots to her. And then there's also Noble's contradictory testimony that Rocky was the only person running towards the car when Ms. Nash testified that she saw two men running towards the vehicle as it was trying to leave. So as well as with the other eyewitness testimony, he did point out that the prosecutor made much during closing about the eyewitnesses saying that, and they did, they in fact had an evidence that the eyewitnesses said that they were not good at calculating height and weight, that they only got glimpses, you know, mere moments before they took cover to try to identify and see these witnesses or see these events taking place and identify these perpetrators. So that was an evidence. When you look at the individual's testimony who were there in the restaurant before the shooting took place. And so that the evidence of Mr. Jeter's statement was cumulative of the evidence given by Rocky and Whaley's testimony that Noble's did fire the gun. Another point would be that Mr. Hall, who also knew Rocky and saw him the night before, he was there in the restaurant and could not identify Rocky as the shooter. This is a man who knew this individual and still couldn't say that this was the person who was firing the gun. So, you know, with taking all of this in context, all the evidence presented towards the jury, Noble's cannot show that the admission of Jeter's statement for the unhearsay purpose had a substantial and injurious effect upon the jury's verdict. Were there any charges ever brought against Rocky? He was the deceased guy's brother. Rocky was the brother. Correct, Your Honor. I am not aware of any charges. I believe that was something that the opposing counsel tried to make, you know, tried to emphasize is that, look, you know, we have this person here and now he's testifying about this. I don't recall there being any charges made against him, though. But counsel clearly tried to say, you know, Rocky was the shooter despite that. And so, you know, since this appears to be a simple case, Your Honors, unless you have any other questions, I don't have anything additional to add to the issues. Fine. Thank you. You're welcome. Thank you, Your Honors. Any more about him? Thank you. I think counsel's not familiar with the record. At page 160, the prosecutor states all three directly or indirectly tell you who shot at the Coney Island. On page 164, the prosecutor states Noble's, Rocky Bohannon, and Rod Jeter. It doesn't say the name, so you're telling us that there's only one way to read that. The third person would need to be Jeter. Especially indirectly. There's only one person to testify, quote, indirectly. That would be Rod Jeter. Exactly. On page 164, she goes further. She says, I wrote it out, and she's now referring to Officer Nolan's testimony. He identified Kelly Noble. Okay. On page 167, she states the third person that was in that car that tells you who shot at the Coney Island. It's Rod Jeter. They're in there. These aren't just inferences, Your Honor. The problem I have is we're pushing Crawford and the Sixth Amendment way, way far now. If we look at how McPherson and them have been upheld, it's based on a notation, note nine in Crawford, which refers to Tennessee versus street. Then there's a parenthesis inside note nine that says, well, testimony does not offer for the truth of the matter asserted is not barred by the confrontation clause. That's it. In all of these courts that have looked at this, really look at how it was used and whether it was limited to the reason it came in. Now, if we accept this, we're past that now. We're past that now. This was used in the oral argument. He identifies Kelly Noble on a crucial element of identification, which is what the Brett court spoke of. It probably would have been helpful to Mr. Nobles if you'd been representing him at trial. I assume that when that happened in closing argument, especially when it happened for the third time, he might have made an objection and the court might have stepped in and stopped it. But that didn't happen, did it? No, it didn't happen, Your Honor. And interestingly, when they first read the content, she asked if it, quote, refreshed his recollection. But if you look at the Michigan court rules, if that is used wrong because it's supposed to be a document that the witness is aware of, that's a grounds for mistrial. That in and of itself is a grounds for mistrial, to introduce a document to so-called refresh recollection. But nobody made a motion for mistrial. No. You should have been there. It would have been helpful. I have nothing further. All right. Thank you very much. And the case is submitted. You may call the next case.